UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

UNITED STATES OF AMERICA,

-against-

DOMINICK CICALE,

Defendant.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**05-CR-60-2 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Non-party Jerry Capeci, a journalist, moves the court to unseal certain documents in the above-captioned case. (Capeci Mot. to Unseal ("Mot.") (Dkt. 1416).) For the reasons stated below, Capeci's motion is GRANTED IN PART and DENIED IN PART.

I. BACKGROUND

Defendant Dominick Cicale is a former captain in the Bonanno organized crime family. (Gov't Sentencing Mem. (Dkt. 1341) at 8.) In 2005, the Government arrested Defendant and, in a series of indictments, charged him with murder in aid of racketeering, conspiracy to commit murder in aid of racketeering, use of a firearm in connection with crimes of violence, racketeering (including predicate acts of loansharking, bookmaking, robbery conspiracy, and assault in aid of racketeering) and racketeering conspiracy. (Indictment (Dkt. 1) ¶¶ 23-29; see also Mar. 22, 2005, 1st Superseding Indictment (Dkt. 22); June 23, 2005, 2d Superseding Indictment (Dkt. 65); Nov. 2, 2005, 3d Superseding Indictment (Dkt. 108) ¶¶ 25-26, 34-36, 46-49, 52-54, 65-66, 67-70, 81-82.) Cicale faced the death penalty on the charge of murder in aid of racketeering. See 18 U.S.C. § 1959(a)(5); United States v. Basciano, 384 F. App'x 28, 32 (2d Cir. 2010) (summary order). (Gov't Sentencing Mem. at 10.)

1

In January 2006, Defendant began cooperating with the Government. (Gov't Sentencing Mem. at 11.) Shortly thereafter, Defendant pleaded guilty to a four-count information charging him with two counts of murder in aid of racketeering, one count of racketeering conspiracy, and one count of assault in aid of racketeering. (Superseding Information (Dkt. 158); Gov't Sentencing Mem. at 11-12.) As the Government detailed in its motion for downward departure pursuant to Section 5K1.1 of the Sentencing Guidelines, Cicale substantially assisted the investigation and prosecution of members of the Bonanno and other La Cosa Nostra crime families, including by testifying or preparing to testify against Bonanno family acting bosses Vincent Basciano and Michael Mancuso and Gambino family boss John A. Gotti. (Gov't Sentencing Mem. at 13-57; Sentencing Hr'g Tr. (Dkt. 1356) 6:9-10:23, 23:2-24:17.) According to the Government, Defendant's "information and testimony . . . led to the prosecution of more than a dozen inducted members of the Bonanno family" and was "particularly critical" to disrupting the organization following the incarceration of longtime boss Joseph Massino. (Gov't Sentencing Mem. at 1-2.)

Partly in recognition of Defendant's extensive cooperation, the court granted the Government's motion for a downward departure and sentenced Defendant to a ten-year term of imprisonment, followed by a five-year term of supervised release (including a condition of 1,000 hours of community service), rather than the life sentence that the Sentencing Guidelines advised. (Sentencing Hr'g Tr. 5:15-19, 16:18-28:25.) Having completed his term of imprisonment, Defendant's current whereabouts are not, the Government avers, a matter of public record. (Gov't Ltr. in Resp. to the Mot. ("Gov't Resp.") (Dkt. 1424) at 1.)

Capeci is a journalist who has written extensively about La Cosa Nostra. He publishes "Gang Land," a "weekly online column about organized crime" on his website,

www.ganglandnews.com. Capeci asks the court to unseal three documents that are implicitly referenced by the public docket entry for the Government's December 9, 2014, Opposition to Defendant's Motion to Vacate or Alter Sentence (the "Government's Opposition") (Gov't Opp'n to Def. Mot to Vacate or Alter Sentence ("Gov't Opp'n") (Dkt. 1379)): (1) "a motion by [Defendant] to set aside or vacate his sentence"; (2) "the government letter of opposition to that motion"; and (3) "any decision [the court] may have made concerning" those filings. (Mot. at 1, 4.)

The court has identified two documents that are responsive to Capeci's motion. The first is a one-page pro se letter to the court in which Defendant, citing health problems and the risks posed by working around other felons, asks the court to modify his conditions of supervised release by vacating his community-service requirement. (See Def. July 25, 2014, Mot. to Vacate or Alter Sentence ("Def. Mot.") (Dkt. Number Pending).) Alternatively, Defendant proposes that the court allow him to fulfill this requirement by performing community service through a program of his own choosing. (Id.) The second is the Government's Opposition, which notes that "it is unclear how participation in [community service programs recommended by Defendant's probation officer] would compromise the defendant's safety" and advises that placement with Defendant's requested community-service organization "would be inadvisable and inappropriate." (Gov't Opp'n at 2.) No separate document reflects the court's decision on Defendant's motion, as the court simply denied that motion in a notation on Defendant's letter. (Def. Mot.)

After Capeci moved to unseal these documents, the court directed the Government and Defendant to respond to Capeci's motion by either (1) consenting to having the requested documents unsealed or (2) explaining why the documents should be kept under seal and

proposing redacted public versions of each. (May 17, 2017, Order (Dkt. 1418).) The Government has responded to that order; Defendant has not. (Gov't Resp.; Gov't Sealed Ex Parte Ltr. (Dkt. 1425) (proposing redactions).) In its response, the Government argues that, to balance the public interest in access to the documents in question with the risk that full disclosure would endanger Defendant, the court should unseal the documents in question subject to redaction of "certain information that could reveal [Defendant's] relocation area, which is not otherwise known to the public." (Gov't Resp. at 1.)

## II. LEGAL STANDARD

"Federal courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." Newsday LLC v. Cty. of Nassau, 730 F.3d 156, 163 (2d Cir. 2013); see also In re NBC Universal, Inc., 426 F. Supp. 2d 49, 56 (E.D.N.Y. 2006) ("The First Amendment demands broader disclosure than the common law." (emphasis omitted)).

### A. First Amendment

Under the First Amendment, the public has a qualified right of access to criminal trials and to other criminal proceedings that "considerations of experience and logic" dictate should presumptively be open to the public. Press-Enterprise Co. v. Super. Ct. of Calif. for Riverside Cty., 478 U.S. 1, 7-13 (1986). The First Amendment qualified public right of access is not limited to the right to attend proceedings, but also covers many court documents. Newsday, 730 F.3d at 163-64. In determining whether the First Amendment right of access attaches to a particular document, the court takes two approaches. Under the first, in line with the "experience and logic" test prescribed by Press-Enterprise, the court considers "both whether the documents have historically been open to the press and general public and whether public access plays a

significant positive role in the functioning of the particular process in question." Id. at 164 (quoting Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006)). Under the second, if the document "relate[s] to judicial proceedings covered by the First Amendment right," the court "asks whether the documents at issue 'are derived from or are a necessary corollary of the capacity to attend the relevant proceedings.'" Id. (quoting Lugosch, 435 F.3d at 120).

The First Amendment right of access is qualified, not absolute. Even when the First Amendment right of access applies, "[p]roceedings may be closed and, by analogy, documents may be sealed if 'specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" In re N.Y. Times Co., 828 F.2d 110, 116 (2d Cir. 1987) (quoting Press-Enterprise, 478 U.S. at 13-14). Compelling interests warranting closure of a courtroom—and, by extension, sealing of court documents— "may include the defendant's right to a fair trial; privacy interests of the defendant, victims or other persons; the integrity of significant government activities entitled to confidentiality, such as ongoing undercover investigations or detection devices; and danger to persons or property." United States v. Doe, 63 F.3d 121, 128 (2d Cir. 1995) (citations, internal quotation marks, and alterations omitted). "The more extensive a request for sealing, 'the greater must be the gravity of the required interest and the likelihood of risk to that interest' to justify it." United States v. Armstrong, 185 F. Supp. 3d 332, 336 (E.D.N.Y. 2016) (quoting United States v. Zazi, No. 09-CR-663 (RJD), 2010 WL 2710605, at *3 (E.D.N.Y. 2010)).

**B. Common Law**

Similarly, the common law recognizes "a general right to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978) (footnote omitted). This longstanding right is "based on the need for

5

federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) ("Amodeo II"). This common-law right of access attaches only to "judicial documents," which are documents that are "relevant to the performance of the judicial function and useful in the judicial process." United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I"). In determining whether a document filed in court is a "judicial document" to which the common law right of access attaches, "[t]he locus of the inquiry is, in essence, whether the document 'is presented to the court to invoke its powers or affect its decisions.'" Under Seal v. Under Seal, — F. Supp. 3d. —, 2017 WL 3432720, at *3 (S.D.N.Y. 2017) (quoting Amodeo II, 71 F.3d at 1050).

Once a court determines that a document is a "judicial document," the court must consider "the weight to be given the presumption of access," based on "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." Amodeo II, 71 F.3d at 1049. The court then balances the presumption in favor of access against "competing considerations," including whether public access to the documents in question would "adversely affect law enforcement interests or judicial performance" or infringe on "the privacy interests of those resisting disclosure." Id. at 1050-51.

### III. DISCUSSION

After reviewing the documents in question, as well as Capeci's motion and the Government's response, the court concludes that these documents are subject to a qualified public right of access under the First Amendment. To the extent that these documents suggest Defendant's current location, however, the court finds that there is a substantial risk that their disclosure could endanger Defendant. The court therefore orders these documents to be unsealed, subject to certain redactions, as discussed below.

## A. The First Amendment Right of Access Attaches to These Documents

The court begins by considering whether a First Amendment qualified public right of access attaches to the documents at issue.[1] The Government acknowledges that these documents are presumptively public. (Gov't Resp. at 1.) In the absence of any argument to the contrary, the court assumes, for purposes of this order, that a First Amendment right of access attaches to the documents at issue.

This assumption, the court notes, comports with "considerations of experience and logic." See Press-Enterprise, 478 U.S. at 9. Requests to modify conditions of supervised release are typically filed on a defendant's public docket, and thus "historically have been open to the press and general public." Id. at 8. Furthermore, "public access plays a significant positive role in the functioning of the particular process in question," id., namely, the court's determination of the terms under which Defendant will serve his sentence of supervised release.

This assumption is also consistent with cases holding that a First Amendment right of access applies to other sentencing-related documents. The Second Circuit has held that the First Amendment presumptively applies to sentencing proceedings, see United States v. Alcantara, 396 F.3d 189, 196-98 (2d Cir. 2005), and it has described as "persuasive" the holdings of other courts that the same right of access attaches to documents filed in connection with sentencing proceedings, id. at 197 (citing CBS, Inc v. U.S. Dist. Ct. for the Cent. Dist. of Cal., 765 F.2d 823, 826 (9th Cir. 1985) (Kennedy, J.); United States v. Santarelli, 729 F.2d 1388, 1390 (11th Cir. 1984)); cf. United States v. Gerena, 869 F.2d 82, 85 (2d Cir. 1989) (stating that the First

---

[1] Because, as noted above, the public right of access protected by the First Amendment is broader than that protected by the common law, the court need only address the greater scope of disclosure required under the First Amendment. Cf. United States v. Basciano, No. 03-CR-929 (NGG), 2010 WL 1685810, at *2 n.3 (E.D.N.Y. Apr. 23, 2010) (declining to reach the question of whether the First Amendment required disclosure, as disclosure was required under the common law).

7

Amendment qualified public right of access extends to materials filed in connection with "post-trial motions"). Several other courts have held that the First Amendment right of access extends to motions relating to the calculation of a criminal sentence.[2] See CBS, 765 F.2d at 824-26 (Rule 35 motion and related pleadings); United States v. Raybould, 130 F. Supp. 2d 829, 833 (N.D. Tex. 2000) (Section 5K1.1 motion for downward departure); United States v. Morales, No. 14-CR-3118, 2015 WL 2406099, at *1-2 (S.D. Cal. May 19, 2015) (same); United States v. Fretz, No. 7:02-CR-67-1-F, 2012 WL 1655412, at *3 (E.D.N.C. May 10, 2012) (motion for downward departure, Rule 35 motion, and motion to amend sentence); United States v. Morgan, No. 5:06-CR-00164-02, 2008 WL 1913395, at *3 (S.D. W. Va. Apr. 28, 2008) (Rule 35 motion and related documents); cf. United States v. Doe, 870 F.3d 991, 998 (9th Cir. 2017) (assuming, without deciding, that First Amendment right of public access attaches to documents filed in connection with a Section 5K1.1 motion). The court sees no meaningful distinction between these cases and the motion at bar: Whatever public interests are served by granting the public access to the documents used by a court to determine a sentence would also seem to be served by granting the public access to documents relied on by a court to determine whether that sentence should be modified.

### B. Partial Sealing Is Necessary to Preserve a Compelling Interest in Defendant's Safety

Having assumed for purposes of this order that a First Amendment right of access attaches to the documents at issue, the court next considers whether these documents should nevertheless remain under seal. The court concludes that certain information contained in those documents must remain under seal in order to preserve a compelling interest in ensuring

---

[2] One notable exception to this general rule is that there is no First Amendment right of access to presentence reports. E.g., In re Morning Song Bird Food Litig., 831 F.3d 765, 773 (6th Cir. 2016) (collecting cases); Alcantara, 396 F.3d at 197 n.6; United States v. Corbitt, 879 F.2d 224, 237 (7th Cir. 1989).

Defendant's continued safety, and that redaction of that information is the narrowest means of preserving that interest. See Press-Enterprise, 478 U.S. at 13-14.

There is clearly a compelling interest, warranting sealing, in Defendant's safety. As the Second Circuit has recognized, "danger to persons" is a compelling interest warranting courtroom closure. See Doe, 63 F.3d at 128 (citing Application of The Herald Co., 734 F.2d 93, 100 (2d Cir. 1984)). The court finds that Defendant faces a substantial risk of danger as a result of his highly public cooperation with the Government against organized crime. Defendant cooperated extensively against the Bonanno crime family and other La Cosa Nostra members and organizations. His cooperation was, by the Government's account, "critical" and played a role in the conviction of several high-ranking Mafiosi. (Gov't Sentencing Mem. at 2.) Courts in this circuit have been attentive to the risks faced by those offering testimony against such powerful criminal organizations. See, e.g., United States v. Gotti, 459 F.3d 296, 346 (2d Cir. 2006) (no abuse of discretion in empaneling an anonymous and sequestered jury given that, inter alia, "the defendants were charged with membership in . . . the Gambino Family"). Compounding the danger to Defendant, numerous individuals against whom he cooperated were themselves implicated in murders, suggesting the danger of cooperating against these individuals and the organizations to which they belong or belonged. (See Gov't Sentencing Mem. at 3 tbl.) Moreover, Defendant was no ordinary witness but a Mafia turncoat who provided evidence against his former partners in crime, which may increase the risk of violent retaliation. While no party has produced evidence of direct threats against Defendant, no such evidence is necessary to establish that there is a "compelling interest" in protecting his safety. See Doe, 63 F.3d at 130 ("The problem of retaliatory acts against those producing adverse testimony is especially acute in

the context of criminal organizations, such as the one in which [Defendant] allegedly participated.")

Preserving this "compelling interest" in Defendant's safety requires maintaining the confidentiality of his current location and where he may be performing community service. Public disclosure of those locations would increase the likelihood that Defendant would be targeted for retribution. (Gov't Resp. at 1.) The same is true if the identity or type of organization for which Defendant is performing community service were made public, as such information would make it easier to locate Defendant. Accordingly, the court agrees with the Government that keeping this information under seal is necessary to protect a compelling interest in Defendant's safety. The risk of harm to Defendant from the public disclosure of this information clearly outweighs any impingement on First Amendment values resulting from keeping this information under seal.

No party has identified any other interest served by sealing the documents in question. Accordingly, the court will order those documents to be unsealed, subject to the redaction of information that suggests Defendant's location or where he may be performing community service. The court finds that the exclusive redaction of such information is narrowly tailored to preserving Defendant's safety while doing least violence to the First Amendment values of judicial transparency and public disclosure. As discussed in the attached temporarily sealed order, however, the court slightly modifies the Government's proposed redactions to unseal several phrases that, the court concludes, could not reasonably suggest Defendant's location or where he may perform community service. (See Sealed Order (Dkt. Number Pending).)

## IV. CONCLUSION

For the foregoing reasons, Capeci's Motion to Unseal (Dkt. 1416) is GRANTED IN PART and DENIED IN PART. The Government is DIRECTED to file redacted versions of Defendant's Motion and its Opposition on the public docket for this case, consistent with this Memorandum and Order and with the accompanying sealed order. The court STAYS this order for 30 days so that any party that wishes to appeal on the basis that further sealing is appropriate may seek a lengthier stay from the Court of Appeals. See United States v. Huntley, 943 F. Supp. 2d 383, 388 (E.D.N.Y. 2013).

The Government is respectfully DIRECTED to serve a copy of this order upon Cicale, and the Clerk of Court is respectfully DIRECTED to serve a copy of this order upon non-party Jerry Capeci using the contact information listed in his Letter in Further Support of His Motion to Unseal (Dkt. 1423).

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
January 10, 2018

/NICHOLAS G. GARAUFIS
United States District Judge